## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ASCOT SPECIALTY INSURANCE COMPANY, a Rhode Island Corporation; | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | Case No.: 1:24-cv-5216 |
| MIDWEST TITLE & CLOSING SERVICES LLC, an Illinois Limited Liability Company; RACHEL IRWIN, ESQ., an individual; MARCIN CHOJNACKI, an individual; UMER MALIK, an individual; FAIR OAKS BLVD LLC, a Wyoming Limited Liability Company; GREGORY HAYNES, an individual; SHOBANA SHANKAR, an individual; RAGHAVENDRA JAYANTH CHAKRAVARTHY, an individual; SYED ABBAS, an individual; JONATHAN SOR, an individual; THOMAS MICHEL, an individual; STEPHANE VERDIER, an individual; RICK CHEN, an individual; THOMAS LAU, an individual; TONY LAU, an individual; HARRY TANG, an individual; KENNETH STAFFORD, an individual; RANDY HUI, an individual; FRANCISCO FERNANDEZ, an individual; SYLVIA GONZALEZ, an individual; DAVID WEINER, an individual; and GER-LIH LIN, an individual; | : : : : : : : : : : : : : : : : : : : : : : : : : : : | Presiding Judge:  Magistrate Judge: |
| Defendants. | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, *et. seq.*, Plaintiff Ascot Specialty

Insurance Company ("Ascot") files this action seeking a declaration of its rights and obligations

under an errors and omissions insurance policy issued to Defendant Midwest Title & Closing

Services LLC ("Midwest") with respect to twelve interrelated lawsuits alleging a RICO conspiracy in the sale of various parcels of real property for investment purposes.

### INTRODUCTION

1.      Ascot issued Title Agents, Abstractors & Escrow Agents Errors & Omissions Liability Insurance Policy number TUS-0621300 to Midwest on a claims-made and reported basis, for the policy period of October 18, 2022 to October 18, 2023 (the "Policy"). A true and correct copy of the Policy is attached as Exhibit "A."

2.      Midwest is owned by Defendants Marcin Chojnacki ("Chojnacki") and Rachel Irwin ("Irwin").

3.      The other Defendants have severally filed the following twelve lawsuits in this Court[1] against Midwest, Chojnacki, Irwin, and other non-parties to this action, collectively referred to as the "Lawsuits":

- *Umer Malik, et al. v. Prairie Raynor, LLC, et al.*, Case No.: 1:23-cv-01182 (the "Malik Lawsuit") (Doc. No. 5);

- *Gregory Haynes v. Fairview Avenue Properties, LLC, et al.*, Case No.: 1:23-cv-01596 (the "Haynes Lawsuit") (Doc. No. 27);

- *Shobana Shankar, et al. v. Fairview Avenue Properties, LLC, et al.*, Case No.: 1:23-cv-01469 (the "Shankar Lawsuit") (Doc. No. 140);

---

[1] In the spirit of brevity and judicial economy, in lieu of attaching each of the complaints as exhibits, this filing cites their Pacer docket locations. *See*, *Perrywatson v. United Airlines, Inc.*, 762 F. Supp. 2d 1107, 1126 (N.D. Ill. 2011), *aff'd sub nom. Perrywatson v. United Air Lines, Inc.*, 527 F. App'x 559 (7th Cir. 2013) (A court can take judicial notice of its own records.)

- *Syed Abbas v. Page Street Properties, LLC, et al.*, Case No.: 1:23-cv-01691 (the "Abbas Lawsuit") (Doc. No. 1);

- *Jonathan Sor v. TCF National Holdings, Inc., et al.*, Case No.: 1:23-cv-02401 (the "Sor Lawsuit") (Doc. No. 1);

- *Thomas Michel, et al. v. Marcin Chojnacki, et al.*, Case No.: 1:23-cv-02546 (the "Michel Lawsuit") (Doc. No. 2);

- *Rick Chen, et al. v. Marcin Chojnacki, et al.*, Case No.: 1:23-cv-02520 (the "Chen Lawsuit") (Doc. No. 4;)

- *Kenneth Stafford v. Marcin Chojnacki, et al.*, Case No.: 1:23-cv-03173 (the "Stafford Lawsuit") (Doc. No. 1);

- *Randy Hui v. Marcin Chojnacki, et al.*, Case No.: 1:23-cv-03430 (the "Hui Lawsuit") (Doc. No. 1);

- *Franciso Fernandez, et al. v. Deodar, Evergreen, & Butternut EC LLC, et al.*, Case No.: 1:23-cv-04406 (the "Fernandez Lawsuit") (Doc. No. 1);

- *David Weiner v. Marcin Chojnacki, et al.*, Case No.: 1:23-cv-16573 (the "Weiner Lawsuit") (Doc. No. 1); and

- *Ger-Lih Lin v. Chase Real Estate, LLC, et al.*, Case No.: 1:24-cv-03725 (the "Lin Lawsuit") (Doc. No. 4).

Ascot collectively refers to the plaintiffs in the Lawsuits as the "Claimants."

4. Each Lawsuit alleges the same or related scheme in which Chojnacki, or one of his associates, acted as the Claimants' real estate agent with respect to the purchase of certain real property for investment purposes and alleges that Chojnacki or his associates made certain

misrepresentations and material omissions regarding the transactions to hide that Chojnacki or a related entity owned the property being purchased, among other things. Specifically, each Lawsuit alleges that the transactions were part of a criminal enterprise as defined by the federal Racketeering Influenced Corrupt Organization ("RICO") statute and that Chojnacki, Midwest, and Irwin were part of or conspired with this criminal enterprise.

5.      Midwest and Irwin tendered each Lawsuit to Ascot for a defense and indemnity. Ascot has agreed to defend, and is defending, Midwest and Irwin subject to a reservation of rights with respect to all Lawsuits except the Chen Lawsuit, which Ascot preliminarily denied coverage.

6.      Ascot now seeks a declaration that it has no obligation to defend or indemnify Midwest, Irwin, or Chojnacki with respect to any of the Lawsuits based on, among other reasons, the Dishonest Conduct Exclusion, the RICO Exclusion, and the Retroactive Date.

## PARTIES

**A.      The Insurer**

7.      Ascot is a corporation organized under the laws of Rhode Island and maintains its principal place of business in New York. Therefore, Ascot is a citizen of Rhode Island and New York.

**B.      The Insureds**

8.      Irwin maintains her domicile in Illinois and is a citizen of Illinois. She is an Illinois licensed attorney, and this Court has personal jurisdiction over Irwin.

9.      Chojnacki maintains his domicile in Illinois and is a citizen of Illinois. He is an Illinois licensed real estate managing broker, and this Court has personal jurisdiction over Chojnacki.

10.     Midwest is a limited liability company organized under the laws of Illinois and maintains its principal place of business in Springfield, Illinois. Irwin and Chojnacki are the sole members of Midwest. Therefore, Midwest is a citizen of Illinois, and this Court has personal jurisdiction over Midwest.

**C.      The Claimants**

11.     Umer Malik maintains his domicile in California. Therefore, Umer Malik is a citizen of California. This Court has personal jurisdiction over Malik because he has purposely availed himself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

12.     Fair Oaks Blvd LLC is a limited liability company organized under the laws of Wyoming and maintains its principal place of business in Cheyenne, Wyoming. Upon information and belief, Umer Malik is the sole member of Fair Oaks Blvd LLC. Therefore, Fair Oaks Blvd LLC is a citizen of California. This Court has personal jurisdiction over Fair Oaks Blvd LLC because it has purposely availed itself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

13.     Gregory Haynes maintains his domicile in California. Therefore, Gregory Haynes is a citizen of California. This Court has personal jurisdiction over Haynes because he has purposely availed himself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

14. Shobana Shankar maintains his domicile in California. Therefore, Shobana Shankar is a citizen of California. This Court has personal jurisdiction over Shankar because he has purposely availed himself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

15. Raghavendra Jayanth Chakravarthy maintains his domicile in California. Therefore, Raghavendra Jayanth Chakravarthy is a citizen of California. This Court has personal jurisdiction over Chakravarthy because he has purposely availed himself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

16. Syed Abbas maintains his domicile in California. Therefore, Syed Abbas is a citizen of California. This Court has personal jurisdiction over Abbas because he has purposely availed himself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

17. Jonathan Sor maintains his domicile in California. Therefore, Jonathan Sor is a citizen of California. This Court has personal jurisdiction over Sor because he has purposely availed himself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

18.     Thomas Michel is a French citizen and is domiciled in Texas. This Court has personal jurisdiction over Michel because he has purposely availed himself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

19.     Stephane Verdier is a French citizen and is domiciled in Texas. This Court has personal jurisdiction over Verdier because she has purposely availed herself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

20.     Rick Chen maintains his domicile in California. Therefore, Rick Chen is a citizen of California. This Court has personal jurisdiction over Chen because he has purposely availed himself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

21.     Thomas Lau maintains his domicile in California. Therefore, Thomas Lau is a citizen of California. This Court has personal jurisdiction over Thomas Lau because he has purposely availed himself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

22.     Tony Lau maintains his domicile in California. Therefore, Tony Lau is a citizen of California. This Court has personal jurisdiction over Tony Lau because he has purposely availed

himself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

23.     Harry Tang maintains his domicile in California. Therefore, Harry Tang is a citizen of California. This Court has personal jurisdiction over Tang because he has purposely availed himself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

24.     Kenneth Stafford maintains his domicile in Illinois. Therefore, Kenneth Stafford is a citizen of Illinois, and this Court has personal jurisdiction over Stafford.

25.     Randy Hui maintains his domicile in California. Therefore, Randy Hui is a citizen of California. This Court has personal jurisdiction over Hui because he has purposely availed himself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

26.     Francisco Fernandez maintains his domicile in California. Therefore, Francisco Fernandez is a citizen of California. This Court has personal jurisdiction over Fernandez because he has purposely availed himself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

27.     Sylvia Gonzalez maintains her domicile in California. Therefore, Sylvia Gonzalez is a citizen of California. This Court has personal jurisdiction over Gonzalez because she has

purposely availed herself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

28.     David Weiner is a United States citizen and maintains his domicile in the United Mexican States. This Court has personal jurisdiction over Weiner because he has purposely availed himself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

29.     Ger-Lih Lin maintains a domicile in California. Therefore, Ger-Lih Lin is a citizen of California. This Court has personal jurisdiction over Lin because he has purposely availed himself of the privilege of conducting activities in this State by engaging in a transaction in this State for the purchase of real property in this State and by filing suit in this Court, both of which are the subject of the current Complaint.

## SUBJECT MATER JURISDICTION AND VENUE

30.     This is an action between citizens of different States. There is complete diversity of citizenship in that no defendant is a citizen of the same state as the plaintiff.

31.     The amount in controversy exceeds $75,000, exclusive of interest and costs. Ascot seeks declarations regarding the availability of coverage under a Title Agents, Abstractors & Escrow Agents Errors & Omissions Liability Insurance Policy providing up to $1 million in liability coverage and each of the various lawsuits that are the subject of this action seek an amount greater than $75,000, exclusive of interest and costs.

32.     Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1).

33.     Venue appropriately lies in this District and Division because: (1) the Policy was issued to Midwest at an address in this District and Division; and (2) the Lawsuits, which are the subject of this Complaint, are all pending in this District and Division.

## BACKGROUND

**A.     The Criminal Enterprise**

34.     The Lawsuits all allege injury as a result of a criminal enterprise headed by Chojnacki and non-party Lauren Mikosz ("Mikosz").

35.     In broad terms, the alleged criminal enterprise is as follows: Chojnacki and Mikosz would solicit investors interested in purchasing real estate; present them with a property owned by or under contract to Chojnacki or an associate; misrepresent the true owner of the property, concealing Chojnacki's interest and implying that a good deal could be gotten based on the purported owner's characteristics; and ultimately convincing the investor to purchase the property at a price artificially inflated by these, and other, misrepresentations.

36.     Some Claimants alleged that they purchased multi-family properties that Chojnacki or other members of the enterprise misrepresented were owned by unsophisticated, long-time landlords who were not optimizing the property for maximum rental income (the "Multi-Family Scheme").

37.     With respect to the Multi-Family Scheme, the respective Claimants allege that Chojnacki or other members of the enterprise also misrepresented the vacancy rate of the property,

the delinquency rate of the tenants in paying rent, and the need for repairs to the property necessary to bring it up to code.

38.     The Multi-Family Scheme Claimants also allege that Chojnacki or other members of the enterprise represented that the property could be profitable if professionally managed by Mainstreet Property Management ("Mainstreet"), a property management company owned or controlled by Chojnacki, but that Mainstreet failed to provide the services promised or in the quality promised once the Claimant acquired the property and retained Mainstreet.

39.     Other Claimants allege that they purchased single family homes that Chojnacki or other members of the enterprise misrepresented were "REO" properties—properties owned by banks following foreclosure (the "Single Family Scheme").

40.     With respect to the Single-Family Scheme, the respective Claimants also allege that Chojnacki or other members of the enterprise misrepresented the need for repairs to the property necessary to bring it up to code.

41.     The Single-Family Scheme Claimants also allege that Chojnacki or other members of the enterprise promised that the property could be renovated and "flipped" for a profit through use of contractors affiliated with or part of the enterprise, but that the contractors failed to provide the services promised, in the quality promised, and/or within the time promised.

**B.      The Insureds' Involvement in the Criminal Enterprise**

42.     The Lawsuits allege that Midwest and Irwin knowingly facilitated the criminal enterprise.

43.     Specifically, the Lawsuits allege that Midwest played a significant role in the transactions by providing registered agent services to the various entities, housing various legal

operations appurtenant to the entities and transactions, as well as receiving payment at closing for some unspecified services described in the closing statement as "Closing Coordination Fee."

44.     The Lawsuits also allege that Irwin acted in furtherance of the criminal enterprise both in her capacity as an agent of Midwest and as an attorney for the certain sellers in the transactions.

45.     Several of the Lawsuits allege that Irwin notarized forged documents in furtherance of the criminal enterprise.

46.     The Lawsuits, however, do not allege that Midwest or Irwin, while acting on behalf of Midwest, committed any specific error in searching title, recording documents, distributing funds, or closing any transaction.

47.     Each Lawsuit expressly alleges that Midwest and Irwin violated the federal RICO statute.

**C.      The Insureds' Tender of the Lawsuits and Ascot's Agreement to Defend**

48.     Midwest and/or Irwin first tendered the Malik Lawsuit to Ascot on or about March 20, 2023.

49.     Midwest and/or Irwin first tendered the Haynes Lawsuit to Ascot on or about March 29, 2023.

50.     Midwest and/or Irwin first tendered the Shankar Lawsuit to Ascot on March 29, 2023.

51.     Midwest and/or Irwin first tendered the Abbas Lawsuit to Ascot on or about March 29, 2023.

52. Midwest and/or Irwin first tendered the Sor Lawsuit to Ascot on or about April 25, 2023.

53. On April 27, 2023, Ascot agreed to defend Midwest and Irwin, subject to a reservation of rights, against the Malik Lawsuit, the Haynes Lawsuit, the Shankar Lawsuit, the Abbas Lawsuit, and the Sor Lawsuit. A true and correct copy of the April 27, 2023 reservation of rights letter is attached as Exhibit "B."

54. Midwest and/or Irwin first tendered the Michel Lawsuit to Ascot on or about April 27, 2023.

55. On May 22, 2023, Ascot agreed to defend Midwest and Irwin against the Michel Lawsuit subject to a reservation of rights. A true and correct copy of the May 22, 2023 reservation of rights letter is attached as Exhibit "C."

56. Irwin first tendered the Chen Lawsuit to Ascot on or about April 27, 2023.

57. On May 23, 2023, Ascot preliminarily denied coverage for the Chen Lawsuit. Ascot's preliminary denial was centered on, among other reasons, the fact that the Chen Lawsuit does not join Midwest or allege that Irwin took any acts or omission on behalf of Midwest. Ascot requested additional information to establish that Irwin was acting on behalf of Midwest with respect to the allegations, but has not yet received any such information. A true and correct copy of the May 23, 2023 preliminary denial letter is attached as Exhibit "D."

58. Midwest and/or Irwin first tendered the Stafford Lawsuit to Ascot on or about May 22, 2023.

59. On May 31, 2023, Ascot agreed to defend Midwest and Irwin against the Stafford Lawsuit subject to a reservation of rights. A true and correct copy of the May 31, 2023 reservation of rights letter is attached as Exhibit "E."

60. Midwest and/or Irwin first tendered the Hui Lawsuit to Ascot on or about June 7, 2023.

61. On July 18, 2023, Ascot agreed to defend Midwest and Irwin against the Hui Lawsuit subject to a reservation of rights. A true and correct copy of the July 18, 2023 reservation of rights letter is attached as Exhibit "F."

62. Midwest and/or Irwin first tendered the Fernandez Lawsuit to Ascot on or about October 3, 2023.

63. On December 7, 2023, Ascot agreed to defend Midwest and Irwin against the Fernandez Lawsuit subject to a reservation of rights. A true and correct copy of the December 7, 2023 reservation of rights letter is attached as Exhibit "G."

64. Midwest and/or Irwin first tendered the Weiner Lawsuit to Ascot on or about December 7, 2023.

65. On December 13, 2023, Ascot agreed to defend Midwest and Irwin against the Weiner Lawsuit subject to a reservation of rights. A true and correct copy of the December 13, 2023 reservation of rights letter is attached as Exhibit "H."

66. On behalf of Claimant Ger-Lih Lin, the Lin Lawsuit was first tendered to Ascot on May 8, 2024.

67.     On June 13, 2024, Ascot agreed to defend Midwest and Irwin against the Lin Lawsuit subject to reservation of rights. A true and correct copy of the June 13, 2024 reservation of rights letter is attached as Exhibit "I."

68.     Ascot declined to defend Chojnacki against all of the Lawsuits because he did not tender any of the Lawsuits to Ascot, has not requested that Ascot provide him coverage, and does not qualify as an "Insured" as defined by the Policy.

69.     Ascot appointed Midwest and Irwin's choice of counsel to defend them against the Malik Lawsuit, the Haynes Lawsuit, the Shankar Lawsuit, the Abbas Lawsuit, the Sor Lawsuit, the Michel Lawsuit, the Stafford Lawsuit, the Hui Lawsuit, the Fernandez Lawsuit, the Weiner Lawsuit, and the Lin Lawsuit.

70.     Ascot continues to defend Midwest and Irwin against the Malik Lawsuit, the Haynes Lawsuit, the Shankar Lawsuit, the Abbas Lawsuit, the Sor Lawsuit, the Michel Lawsuit, the Stafford Lawsuit, the Hui Lawsuit, the Fernandez Lawsuit, the Weiner Lawsuit, and the Lin Lawsuit subject to a reservation of rights.

71.     Ascot contends that it has no obligation, or no further obligation, to defend or indemnify Midwest, Irwin, or Chojnacki against the Lawsuits. Upon information and belief, Midwest and Irwin dispute this contention. Accordingly, there is an actual controversy between the parties.

72.     The Claimants are joined in this action so that the Court's declaration can provide complete relief to all interested parties.

<u>**COUNT 1 – DECLARATORY JUDGMENT –**</u>
<u>**DISHONEST CONDUCT EXCLUSION**</u>

73.     Ascot incorporates by reference the allegations of paragraphs 1 through 72.

74.     In relevant part, the Policy states:

This Policy does not apply to any **Claim** based upon, arising out of, directly or indirectly, in whole or in part, or in any way involving:

**A.**     Any actual or alleged **Dishonest Conduct** by any person or entity, whether an **Insured** or a non-insured and whether known or unknown, at any time under any circumstances. This exclusion applies broadly to any claim that would not exist but for any actual or alleged **Dishonest Conduct** or any claim in which **Dishonest Conduct** was actually or allegedly a material part, including but not limited to any claim alleging that:

1)     Any **Insured** engaged in any **Dishonest Conduct**; [and]

2)     Any **Insured** failed, through negligence or otherwise, to detect or prevent any **Dishonest Conduct**, whether by another **Insured** or a known or unknown non-insured […]

This exclusion, however, will not apply to the reimbursement of **Damages** and **Claims Expenses** provided in **Section II. Extensions of Coverage, C.**

(*See*, Exhibit A, Policy, IV.A.) Ascot refers to this exclusion as the "Dishonest Conduct Exclusion."

75.     Section II. Extension of Coverage, C., Negligent Failure to Prevent Dishonest Conduct, provides in relevant part as follows:

1)     The Insurer shall reimburse the **Insured** for **Damages** and **Claims Expenses** resulting from a **Claim** first made against the **Insured** and reported to the Insurer during the **Policy Period**, or **Extended Reporting Period**, if applicable, for a **Wrongful Act** and alleging that:

(a)     An **Insured** negligently failed to detect or prevent any **Dishonest Conduct** by any known or unknown non-insured; […]

16

provided that the **Claim** alleges a **Wrongful Act** that occurred on or subsequent to the **Retroactive Date** and that no **Insured** personally engaged in or knowingly acquiesced to the alleged **Dishonest Conduct**.

(2)     The maximum payment, including both reimbursement of **Damages** and **Claims Expenses**, by the Insurer pursuant to this **Section II. Extensions of Coverage, C.**, shall be $25,000 regardless of the number of **Insureds** involved, **Claims** made, number of **Wrongful Acts**, or instances of **Dishonest Conduct**. […]

(*See*, Exhibit A, Policy, II.C.) Ascot refers to this coverage extension as the "Negligent Failure to Prevent Dishonest Conduct Extension."

76.     The Policy defines "Dishonest Conduct" to include "any dishonest, fraudulent, malicious, criminal, or intentionally wrongful conduct, acts, error[s] or omissions." (*See*, Exhibit A, Policy, III.I.)

77.     Each Lawsuit is premised on the existence of a criminal enterprise and/or other fraudulent acts or omissions. Accordingly, each Lawsuit alleges Dishonest Conduct as defined by the Policy, either undertaken by an insured or a non-insured.

78.     None of the Lawsuits allege any factual scenario that involves only negligent or non-intentional conduct on the part of all participants in the respective transactions. Accordingly, all liability asserted in each Lawsuit would be based on some Dishonest Conduct as defined in the Policy.

79.     If any insured actually or allegedly engaged in the Dishonest Conduct, the Dishonest Conduct Exclusion precludes all coverage. Further, such conduct does not fall within the definition of "Wrongful Act." (*See*, Exhibit A, Policy, III.Z.)

17

80. If no insured actually or allegedly engaged in the Dishonest Conduct and, instead, was merely negligent in failing to prevent the Dishonest Conduct, then the Negligent Failure to Prevent Dishonest Conduct Extension would provide, at most, reimbursement of $25,000 for Claims Expenses and Damages.

81. Ascot has already paid in excess of $25,000 in the defense of the Lawsuits and, accordingly, has fulfilled any and all obligations under the Negligent Failure to Prevent Dishonest Conduct Extension.

82. Either way, Ascot is entitled to a declaration that it has no further obligation to defend any of the Lawsuits or pay any judgment or settlement resolving any of the Lawsuits.

83. Additionally, pursuant to the reimbursement provision, Ascot is entitled to recoup, from Midwest and Irwin jointly and severally, the Claim Expenses that Ascot has incurred, over and above the $25,000 sublimit, in providing Midwest and Irwin with a defense against the Malik Lawsuit, the Haynes Lawsuit, the Shankar Lawsuit, the Abbas Lawsuit, the Sor Lawsuit, the Michel Lawsuit, the Stafford Lawsuit, the Hui Lawsuit, the Fernandez Lawsuit, the Weiner Lawsuit, and the Lin Lawsuit. (*See*, Exhibit A. Policy, VIII.H.)

## COUNT 2 – DECLARATORY JUDGMENT – RICO EXCLUSION

84. Ascot incorporates by reference the allegations of paragraphs 1 through 72.

85. In relevant part, the Policy states:

> This Policy does not apply to any **Claim** based upon, arising out of, directly or indirectly, in whole or in part, or in any way involving:

> Any actual or alleged […] racketeering-influenced corrupt organizations, and conspiracies regarding the same […]

(*See*, Exhibit A, Policy, IV.Y.)

86. Each Lawsuit alleges the existence of a RICO enterprise and a conspiracy to further the RICO enterprise.

87. All Lawsuits allege that Chojnacki is a principal in the RICO enterprise. The Weiner Lawsuit alleges that Irwin is a principal RICO enterprise.

88. All of the other Lawsuits allege that Irwin and Midwest are RICO conspirators.

89. Pursuant to the above-quoted provisions, the Policy does not provide any coverage, either for a defense or indemnity, for the Lawsuits.

90. Therefore, Ascot is entitled to a declaration that it has no obligation to defend or indemnify Midwest, Irwin, or Chojnacki with respect to the Lawsuits.

91. Additionally, pursuant to the reimbursement provision, Ascot is entitled to recoup, from Midwest and Irwin jointly and severally, the Claim Expenses that Ascot has incurred in providing Midwest and Irwin with a defense against the Malik Lawsuit, the Haynes Lawsuit, the Shankar Lawsuit, the Abbas Lawsuit, the Sor Lawsuit, the Michel Lawsuit, the Stafford Lawsuit, the Hui Lawsuit, the Fernandez Lawsuit, the Weiner Lawsuit, and the Lin Lawsuit. (*See*, Exhibit A. Policy, VIII.H.)

## COUNT 3 – DECLARATORY JUDGMENT – RETROACTIVE DATE

92. Ascot incorporates by reference the allegations of paragraphs 1 through 72.

93. The insuring agreement of the Policy only provides coverage if:

> The **Wrongful Act** was first committed on or after the **Retroactive Date** and before the expiration of the **Policy Period**.

(*See*, Exhibit A, Policy, I.A.)

94. The Policy also provides the following exclusion:

> This Policy does not apply to any **Claim** based upon, arising out of, directly or indirectly, in whole or in part, or in any way involving:
>
> Any **Interrelated Wrongful Acts** where the first such **Wrongful Act** occurred prior to the **Retroactive Date**.

(*See*, Exhibit A Policy, IV.HH.) Ascot refers to this exclusion as the "Retroactive Date Exclusion."

95.     The Retroactive Date of the Policy is October 18, 2021. (*See*, Exhibit A, Policy, Declarations.)

96.     The Hui Lawsuit alleges that Irwin and Midwest committed wrongful acts prior to the Retroactive Date.

97.     Specifically, the Hui Lawsuit alleges that in September 2021, Irwin provided Hui falsified rent roll and income documents in connection with Hui's purchase of a multi-family unit. (*See*, Hui Lawsuit, Case No.: 1:23-cv-3430, Doc. 1, ¶¶ 101-104).

98.     Additionally, the Hui Lawsuit alleges that Claimant Randy Hui purchased a single-family home on May 4, 2021, based on misrepresentations by the defendants that the property was bank owned.

99.     Accordingly, the Policy provides no coverage for these acts. They do not fall within the insuring agreement because the acts began prior to the Retroactive Date.

100.     To the extent the Hui Lawsuit alleges any other acts or omissions that occurred after the Retroactive Date, the pre-Retroactive Date acts are "Interrelated Wrongful Acts" as to those acts or omissions.

101.     The Policy defines the term "Interrelated Wrongful Acts" as Wrongful Acts that are "temporally, logically or casually connected by any common nexus of any fact, circumstance, situation, or event, or which are the same, related or continuous acts, regardless of whether the

Claim or Claims alleging such acts involve the same or different claimants, Insureds or legal causes of action […]" (*See*, Exhibit A, Policy, III.N.)

102.     The Hui Lawsuit alleges that all of the acts were done in furtherance of a criminal enterprise and conspiracy. Accordingly, any post-Retroactive Date acts have a common nexus of circumstance, constitute continuing acts, and are logically related to the pre-Retroactive Date acts. Such acts are, thus, "Interrelated Wrongful Acts."

103.     Accordingly, the Retroactive Date Exclusion applies to all of the allegations of the Hui Lawsuit, and Ascot is entitled to a declaration that it has no obligation to defend or indemnify Midwest, Irwin or Chojnacki with respect to the Hui Lawsuit.

104.     Further, the pre-Retroactive Date acts alleged in the Hui Lawsuit are "Interrelated Wrongful Acts" as to the acts alleged in all other Lawsuits because the pre-Retroactive Date acts alleged in the Hui Lawsuit are part of the same overarching criminal enterprise alleged in all of the other Lawsuits.

105.     More specifically, each of the Lawsuits alleging the Multi-Family Scheme allege that the defendants provided falsified rent rolls and income statements, the same as Irwin was alleged to have provided prior to the Retroactive Date in the Hui Lawsuit.

106.     Additionally, each of the Lawsuits alleging the Single-Family Scheme allege that the defendants misrepresented that the properties were bank owned, the same as the defendants alleged to have represented prior to the Retroactive Date in the Hui Lawsuit.

107.     Accordingly, all of the other Lawsuits are based on Interrelated Wrongful Acts occurring prior to the Retroactive Date and are, thus, excluded.

108.    Therefore, Ascot is entitled to a declaration that it has no obligation to defend or indemnify Midwest, Irwin, or Chojnacki with respect to the Lawsuits.

109.    Additionally, pursuant to the reimbursement provision, Ascot is entitled to recoup, from Midwest and Irwin jointly and severally, the Claim Expenses that Ascot has incurred in providing Midwest and Irwin with a defense against the Malik Lawsuit, the Haynes Lawsuit, the Shankar Lawsuit, the Abbas Lawsuit, the Sor Lawsuit, the Michel Lawsuit, the Stafford Lawsuit, the Hui Lawsuit, the Fernandez Lawsuit, the Weiner Lawsuit, and the Lin Lawsuit. (*See*, Exhibit A. Policy, VIII.H.)

## <u>COUNT 4 – DECLARATORY JUDGMENT –<br>CLAIMS-MADE CLAUSE</u>

110.    Ascot incorporates by reference the allegations of paragraphs 1 through 72.

111.    The Policy only provides coverage for Claims made during the policy period. The insuring agreement states:

> The Insurer shall pay on behalf of the **Insured** all sums in excess of the Deductible set forth in Item 4 of the Declarations which the **Insured** shall become legally obligated to pay as **Damages** and **Claims Expenses** resulting from **Claims** first made against the **Insured** during the **Policy Period**, or **Extended Reporting Period** …

(*See*, Exhibit A, Policy, I.)

112.    The Policy, however, deems all Claims arising out of Interrelated Wrongful Acts as a single Claim first made when the first such Claim was made. The Policy states:

> All **Claims** arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed one **Claim**, and such **Claim** shall be deemed to be first made on the earliest date that … [a]ny of the **Claims** were first made …

(*See*, Exhibit A, Policy, VIII.B.)

113. The Weiner Lawsuit was first filed on December 7, 2023, after the Policy Period expired.

114. The Lin Lawsuit was first filed on May 7, 2024, after the Policy period expired.

115. As alleged above, Ascot contends that all of the Lawsuits arise out of Interrelated Wrongful Acts and, thus, the Policy would deem the Claims asserted in the Weiner Lawsuit and the Lin Lawsuit to have been made during the Policy Period, when the first such Claim was made. In the alternative to Count 3 and in the event that the Lawsuits do not arise out of Interrelated Wrongful Acts, neither the Weiner Lawsuit nor the Lin Lawsuit would fall within the insuring agreement because they allege Claims first made after the expiration of the Policy.

116. Accordingly, in the alternative to the arguments asserted in Count 3 above, Ascot is entitled to a declaration that it has no obligation to defend or indemnify Midwest, Irwin, or Chojnacki with respect to the Weiner Lawsuit or the Lin Lawsuit.

117. Additionally, pursuant to the reimbursement provision, to the extent the Weiner Lawsuit or Lin Lawsuit assert a Claim first made after the Policy Period, Ascot is entitled to recoup, from Midwest and Irwin jointly and severally, the Claim Expenses that Ascot has incurred in providing Midwest and Irwin with a defense against the Weiner Lawsuit and Lin Lawsuit. (*See*, Exhibit A. Policy, VIII.H.)

## COUNT 5 – DECLARATORY JUDGMENT – CHOJNACKI NOT AN INSURED

118. Ascot incorporates by reference the allegations of paragraphs 1 through 72.

119. Coverage is only provided to the extent the person or entity seeking coverage is an "Insured" as defined by the Policy.

120.     The Policy's definition of the term "Insured" includes any director, officer, partner, or employee of Midwest, but solely in connection with their rendering of, or failure to render, professional services on behalf of Midwest. (*See*, Exhibit A, Policy, III.M.2.)

121.     Chojnacki only qualifies as an Insured to the extent he provided professional services on behalf of Midwest in relation to the transactions at issue in the Lawsuits.

122.     None of the Lawsuits allege that Chojnacki acted on behalf of Midwest.

123.     Upon information and belief, Chojnacki, in fact, never performed any professional services for or on behalf of Midwest in relation to any of the transactions alleged in the Lawsuits.

124.     Pursuant to the above-quoted provisions, the Policy does not cover Chojnacki, either for a defense or indemnity, for the Lawsuits.

125.     Therefore, Ascot is entitled to a declaration that it has no obligation to defend or indemnify Chojnacki with respect to the Lawsuits.

## COUNT 6 – DECLARATORY JUDGMENT –<br>BENEFICIAL OWNERSHIP EXCLUSION

126.     Ascot incorporates by reference the allegations of paragraphs 1 through 72.

127.     The Policy states:

> This Policy does not apply to any **Claim** based upon, arising out of, directly or indirectly, in whole or in part, or in any way involving:
>
> Any actual or alleged beneficial ownership by any **Insured** in the property which is the subject matter of the **Claim**.

(*See*, Exhibit A, Policy, IV.K.) Ascot refers to this as the "Beneficial Ownership Exclusion."

128.     All of the Lawsuits allege that Chojnacki either indirectly owned and/or exercised *de facto* control over the properties in the alleged transactions.

129.     While Ascot denies that Chojnacki is an insured, in the alternative to Count 5 above and in the event Chojnacki is an insured, the Beneficial Ownership Exclusion applies to all Lawsuits.

130.     Accordingly, in the alternative to the arguments asserted in Count 5 above, Ascot is entitled to a declaration that it has no obligation to defend or indemnify Midwest, Irwin, or Chojnacki with respect to any Lawsuit.

131.     Additionally, pursuant to the reimbursement provision, to the extent the Beneficial Ownership Exclusion applies, Ascot is entitled to recoup, from Midwest and Irwin jointly and severally, the Claim Expenses that Ascot has incurred in providing Midwest and Irwin with a defense against the Malik Lawsuit, the Haynes Lawsuit, the Shankar Lawsuit, the Abbas Lawsuit, the Sor Lawsuit, the Michel Lawsuit, the Stafford Lawsuit, the Hui Lawsuit, the Fernandez Lawsuit, the Weiner Lawsuit, and the Lin Lawsuit. (*See*, Exhibit A. Policy, VIII.H.)

## COUNT 7 – DECLARATORY JUDGMENT – IRWIN NOT AN INSURED FOR LEGAL SERVICES

132.     Ascot incorporates by reference the allegations of paragraphs 1 through 72.

133.     The Policy's definition of the term "Insured" includes any director, officer, partner, or employee of Midwest, but solely in connection with their rendering of, or failure to render, professional services on behalf of Midwest. (*See*, Exhibit A, Policy, III.M.2.)

134.     The Lawsuits variously allege that Irwin was acting on behalf of her law practice and/or on behalf of entities other than Midwest.

135.     Irwin is not an insured for purposes of such acts.

136. Accordingly, Ascot is entitled to a declaration that it has no obligation to indemnify Irwin for any actions or omissions she took on her own behalf or on behalf of an entity other than Midwest.

137. Additionally, the Chen Lawsuit does not include any allegations that Irwin was acting on behalf of Midwest. Further the Chen Lawsuit does not join Midwest as a defendant.

138. Irwin is not an insured for purposes of the Chen Lawsuit.

139. Accordingly, Ascot is entitled to a declaration that it has no obligation to defend or indemnify Irwin with respect to the Chen Lawsuit.

## COUNT 8 – DECLARATORY JUDGMENT – NOTARIZATION EXCLUSION

140. Ascot incorporates by reference the allegations of paragraphs 1 through 72.

141. In relevant part, the Policy states:

> This Policy does not apply to any **Claim** based upon, arising out of, directly or indirectly, in whole or in part, or in any way involving:

> Any actual or alleged notarized certification, acknowledgment or acceptance of:

> 1) Signature, before the **Insured**, without the physical appearance […] before such notary public of the person who is or claims to be the person signing said instrument […]

(*See*, Exhibit A, Policy, IV.BB.1.) Ascot refers to this as the "Notarization Exclusion."

142. The Chen Lawsuit, the Stafford Lawsuit, and the Wiener Lawsuit all allege that Irwin notarized forged documents without the physical appearance of the signatories. (*See*, Chen Lawsuit Complt. ¶¶ 11-114; Stafford Lawsuit Complt. ¶ 98; Exhibit 11; Weiner Lawsuit Complt. ¶¶ 99, 138-139.)

143. The Weiner Lawsuit alleges that Irwin's Illinois notary license was suspended for three months due to her notarization of forged documents. (*See*, Weiner Lawsuit Complt. ¶¶ 102 142, 144.)

144. Pursuant to the Notarization Exclusion, the Policy does not provide any coverage, either for a defense or indemnity, for the Chen Lawsuit, the Stafford Lawsuit, or the Weiner Lawsuit.

145. Therefore, Ascot is entitled to a declaration that it has no obligation to defend or indemnify Midwest, Irwin, or Chojnacki with respect to the Chen Lawsuit, the Stafford Lawsuit, or the Weiner Lawsuit.

146. Additionally, pursuant to the reimbursement provision, Ascot is entitled to recoup, from Midwest and Irwin jointly and severally, the Claim Expenses that Ascot has incurred in providing Midwest and Irwin with a defense against the Stafford Lawsuit and the Winer Lawsuit. (*See*, Exhibit A. Policy, VIII.H.)

## <u>COUNT 9 – DECLARATORY JUDGMENT –<br>PROFESSIONAL SERVICES</u>

147. Ascot incorporates by reference the allegations of paragraphs 1 through 72.

148. The insuring agreement only provides coverage for Claims for a "Wrongful Act." (*See*, Exhibit A, Policy, I.) The Policy defines the term "Wrongful Act" as follows:

> **Wrongful Act** means any negligent act, error or omission committed by an **Insured**, arising solely from the performance of **Professional Services** for others for a fee or commission. **Wrongful Act** does not include **Dishonest Conduct** by an **Insured**.

(*See*, Exhibit A, Policy, III.Z.)

149. The Policy defines the term "Professional Services" as follows:

**Professional Services** means the rendering of or failure to render the following services by any **Insured** on behalf of the **Named Insured,** for others for a fee or commission as specified by the **Named Insured** in the **Application** including but not limited to:

1) Title Insurance Agent;
2) Title Opinions or Title Certifications;
3) Title Abstractor or Title Searcher;
4) Closing, Escrow or Settlement Agent;
5) Signing Agent or Witness Closer;
6) Notary Public, including Digital Notarization and Remote Online Notarization;
7) Public Records Searcher, including Uniform Commercial code searches;
8) Corporate Documents Searcher; or
9) Flood Zone Certifications.

(*See*, Exhibit A, Policy, III.W.)

150. Additionally, the Policy excludes claims arising out of services other than the defined professional services. It states:

This Policy does not apply to any **Claim** based upon, arising out of, directly or indirectly, in whole or in part, or in any way involving:

Any rendering, by the **Insured**, of any service of a professional nature not specifically identified in Section **III. W. Definitions** of this Policy and reference in the **Application**, including but not limited to the structuring of an exchange transaction under Internal Revenue Code § 1031 or services as an architect, engineer, accountant, lawyer, insurance agent/broker, property manager, real estate agent, real estate appraiser, real estate developer, registered investment adviser, and/or securities or commodities broker or dealer.

(*See*, Exhibit A, Policy, IV.F.)

151. The Lawsuits do not allege any errors in the rendering of any Professional Services as defined by the Policy.

152. The Lawsuits allege that Irwin provided certain legal services and other services that fall outside the scope of the defined Professional Services, including acting as registered agent and housing various "legal operations."

153. The Lawsuits allege that Chojnacki acted as a real estate agent and operated a property management company.

154. Accordingly, the above-quoted provisions preclude coverage for the Lawsuits.

155. Therefore, Ascot is entitled to a declaration that it has no obligation to defend or indemnify Midwest, Irwin, or Chojnacki with respect to any of the Lawsuits.

156. Additionally, pursuant to the reimbursement provision, Ascot is entitled to recoup, from Midwest and Irwin jointly and severally, the Claim Expenses that Ascot has incurred in providing Midwest and Irwin with a defense against the Malik Lawsuit, the Haynes Lawsuit, the Shankar Lawsuit, the Abbas Lawsuit, the Sor Lawsuit, the Michel Lawsuit, the Stafford Lawsuit, the Hui Lawsuit, the Fernandez Lawsuit, the Weiner Lawsuit, and the Lin Lawsuit. (*See*, Exhibit A. Policy, VIII.H.)

WHEREFORE, Ascot prays as follows:

1. For a declaration that Ascot has no obligation to defend or indemnify Midwest, Irwin, or Chojnacki against the Lawsuits pursuant to the Dishonest Conduct Exclusion or, in the alternative and to the extent no Insured engaged in any Dishonest Conduct, for a declaration that Ascot has no further obligation to defend or indemnify Midwest, Irwin, or Chojnacki against the Lawsuits because the Negligent Failure to Prevent Dishonest Conduct coverage extension sublimit is exhausted,

2.      For a declaration that Ascot has no obligation to defend or indemnify Midwest, Irwin, or Chojnacki against the Lawsuits pursuant to the RICO exclusion;

3.      For a declaration that Ascot has no obligation to defend or indemnify Midwest, Irwin, or Chojnacki against the Lawsuits, pursuant to the Retroactive Date provision and the Retroactive Date Exclusion;

4.      To the extent the Weiner Lawsuit and the Lin Lawsuit do not arise out of Interrelated Wrongful Acts, for a declaration that Ascot has no obligation to defend or indemnify Midwest, Irwin, or Chojnacki against the Weiner Lawsuit or the Lin Lawsuit because they are not Claims first made during the Policy Period;

5.      For a declaration that Ascot has no obligation to defend or indemnify Chojnacki against the Lawsuits because Chojnacki is not an Insured;

6.      To the extent Chojnacki is an insured, for a declaration that Ascot has no obligation to defend or indemnify Midwest, Irwin, or Chojnacki against the Lawsuits pursuant to the Beneficial Ownership Exclusion;

7.      For a declaration that Ascot has no obligation to defend or indemnify Irwin with respect to the Chen Lawsuit because she is not an insured with respect to that lawsuit and that Ascot has no obligation to indemnify Irwin with respect to any of the other Lawsuits to the extent she was not acting on behalf of Midwest;

8.      For a declaration that Ascot has no obligation to defend or indemnify Midwest, Irwin, or Chojnacki against the Chen Lawsuit, the Stafford Lawsuit, or the Weiner Lawsuit pursuant to the application of the Notarization Exclusion;

9.      For a declaration that Ascot has no obligation to defend or indemnify Midwest, Irwin, or Chojnacki against any Lawsuit because such lawsuits do not allege any errors in Professional Services or arise out of the insureds' performance of excluded professional services;

10.      For recoupment of the fees and costs Ascot has incurred in providing Midwest and Irwin a defense against the Malik Lawsuit, the Haynes Lawsuit, the Shankar Lawsuit, the Abbas Lawsuit, the Sor Lawsuit, the Michel Lawsuit, the Stafford Lawsuit, the Hui Lawsuit, the Fernandez Lawsuit, the Weiner Lawsuit, and the Lin Lawsuit;

11.      For an award of fees and costs incurred by Ascot necessitated by this action; and

12.      For such other and further relief as this Court deems just and proper.

Respectfully submitted this 21st day of June, 2024.

**CLYDE & CO US LLP**

/s/ *Elliot Kim*
Elliot Kim (IL Bar 6332913)
elliot.kim@clydeco.us
30 South Wacker Drive, Suite 2600
Chicago, Illinois 60606
Tel: (312) 635-7000
Fax: (312) 635) 6950

**CLYDE & CO US LLP**

/s/ *Scott F. Bertschi*
Scott F. Bertschi (GA Bar 055716)
*Pro Hac Vice* Forthcoming
scott.bertschi@clydeco.us
Da-Shon A. Dixon (GA Bar 312868)
*Pro Hac Vice* Forthcoming
dashon.dixon@clydeco.us
271 17th Street NW, Suite 1720
Atlanta, Georgia 30363
Tel: (404) 410-3150
Fax: (404) 410-3151

**ATTORNEYS FOR ASCOT SPECIALTY
INSURANCE COMPANY**